ANNA HOOGESTEGER ET AL., PLAINTIFFS-RESPONDENTS,
v. ANNA M. AGNEW, DEFENDANT-APPELLANT.

Argued January 19, 1944—Decided April 20, 1944.

Before Justices CASE, DONGES and PORTER.

For the defendant-appellant, *Andrew Foulds, Jr.*

For the plaintiffs-respondents, *Feder & Rinzler.*

The opinion of the court was delivered by

DONGES, J. Plaintiff Anna Hoogesteger sued to recover damages for injuries claimed to have been inflicted through the negligence of defendant. Her husband sued *per quod.* The suit is based upon the alleged failure of defendant to make necessary repairs, and upon the allegation that defendant violated her duty in improperly, carelessly and negligently constructing the porch and porch rail, in consequence of which the porch rail broke and gave way, causing the female plaintiff to be thrown from the porch to the ground and thereby injured. It was a two-family house and plaintiffs occupied the second floor as tenants of the defendant. Plaintiffs had verdicts and defendant appeals.

Appellant argues that there was no agreement on the part of the defendant landlord to maintain the porch railing; that, if defendant agreed to paint the outside of the building,

including the porch, there was no consideration for the promise; that the failure to paint was not the natural and proximate cause of plaintiff's injuries; and that plaintiff assumed the risk of injury.

In our opinion, a question of fact was presented by the proofs in this case.

Plaintiff Anna Hoogesteger testified that when she entered into the agreement of letting with defendant, the defendant expressly and clearly agreed, as part of the letting, that necessary repairs would be made by defendant. She testified: "I asked her [defendant] about certain repair work in the house before I took the rooms and she said that would be repaired, and if there were any other repairs to let the agent or supervisor know about it."

"Q. State as specifically as you can, what was said? A. She said she would take care of them.

Q. What did she say would be done with regard to repairs? A. To let the agent know of anything that should be fixed; I should let him know as I couldn't get in touch with her and he was the supervisor.

Q. What did she say you should do? A. Things that had to be done around home I should talk to Mr. Shmagula.

Q. When? A. At any time.

Q. As to the future was there anything said as to repairs that would become necessary in the future, if you moved in? A. Mr. Shmagula said, if anything is to be done in here or around the house, let him know about it.

Q. When did he say that? A. After we moved in a few months.

Q. As to the future, whenever repairs were necessary, what if anything did Mrs. Agnew say when you made your tenancy agreement? A. That would be taken care of through Mr. Shmagula."

. Schmagula testified: "Q. When she asked for anything to be done, it was done? A. That's it."

It is undisputed that from time to time plaintiff notified the supervisor of needed repairs and they were made. It is, likewise, undisputed that plaintiff notified the supervisor, Schmagula, of the need of paint, and that the wood of the

porch was cracking because of the need of paint; and it was further undisputed that plaintiff called attention to the need of painting outside. She testified, "I asked him a number of times to paint the place. * * * I asked him whether he was going to paint the building and it was getting dilapidated and the rain was getting into the seams and the nails were rusty. * * * That was 1940. * * * I told him that the house needed painting, that it was going to ruin and that the nails were rusty and the place was dilapidated * * * ."

The defendant denied that there was any agreement to make repairs. She testified, "Q. What did you say about making repairs? A. I said nothing about it, because I take care of my property and I promised nothing to be done now or in the future." She further testified, "Q. What about the painting, anything said? A. Anybody looking at it could see that it needed some paint. I had to paint my own house and I was planning to have this done, both to my own house and this house and it was very hard for me to get a painter or carpenter and I looked for two years and I couldn't make arrangements and I had to let it go over until this year."

Following the accident, repairs were made and painting was done. Defendant testified, "Q. After the accident you paid for and assumed the responsibility of fixing? A. It was my house and I repaired it. Q. Did Mr. and Mrs. Hoogesteger invite you in the house? A. If something went wrong and it was a big job, I would go up and look it over. I don't know that I was in the house for anything else. That was completely attended to by Mr. Shmagula."

It was testified by an architect that failure to paint produced the condition that resulted in the accident; that, if the porch and rails had been properly painted, the wood would have been preserved and the nails kept in better condition. He testified further that the wood evidenced a lack of painting for six or eight years and that "It should be painted with two coats every four or five years." The testimony was that it had not been painted for six or seven years.

The rule is stated in *Folley* v. *United Building and Loan Association,* 117 *N. J. L.* 54, "* * * where the landlord

assumes a binding contractual obligation to repair (or, perhaps, where he reserves the right of entry for that purpose in event of the lessee's default in the performance of a like undertaking), or negligently makes repairs gratuitously undertaken, he is liable in damages for the breach of duty so arising."

The defendant argues that her attention was not called to the condition of disrepair of the railing in the particular that produced the injury, namely, the drying of the rail at the ends, and the loosening of the nails holding the rail in place, and that therefore there was no liability for injury resulting from such condition. But it was not necessary for the plaintiff to show that defendant's attention had been so called if the condition of the rail is shown to be a natural result of the failure to paint, the need for which had been brought to defendant's attention, and as to that phase of the case the proofs raise a question of fact, because the architect testified that the condition that caused the rail to fall was a natural consequence of the failure to paint.

As stated, we conclude that a question of fact was presented by the testimony, from which the trial judge concluded that there was a contractual obligation, as part of the letting, to repair; that the plaintiff advised the defendant of the need of repairs, which were not performed; that, as a consequence of such failure to repair (paint) the accident occurred; that plaintiff's conduct was not negligent; and that, therefore, plaintiffs were entitled to recover.

The judgments are affirmed, with costs.